720 S.E.2d 564

Shelia F. HAYNES, as Administratrix of the Estate of Elgene Phillips, Jr., Deceased, Plaintiff Below, Petitioner

v.

DAIMLERCHRYSLER CORPORATION, a Foreign Corporation; Autoliv Asp, Inc., a Foreign Corporation; and Joe Holland Chevrolet, Inc., a West Virginia Corporation, Defendants Below, Respondents.

No. 101151.

Supreme Court of Appeals of West Virginia.

Submitted May 25, 2011.

Decided June 17, 2011.

Concurring Opinion of Justice Benjamin July 22, 2011.

Charles M. Love, IV, Esq., Christopher L. Brinkley, Esq., The Masters Law Firm LC, Charleston, WV, for Petitioner.

Philip J. Combs, Esq., Debra C. Price, Esq., Allen Guthrie & Thomas, PLLC, Charleston, WV, for Respondent Autoliv, Asp, Inc.

PER CURIAM:

This case is before the Court upon an appeal of the May 4, 2010, order of the Circuit Court of Kanawha County by the petitioner, Shelia Haynes, as Administratrix of the Estate of Elgene Phillips, Jr. In this appeal, the petitioner argues that the circuit court erred in denying her motion to sever claims against a defendant below, DaimlerChrysler Corporation (hereinafter, "Chrysler"), and further erred in denying her motion to compel defendant below and respondent herein, Autoliv Asp, Inc. (hereinafter, "Autoliv"), to pay the remainder of an agreed upon settlement of the underlying wrongful death action. The petitioner seeks a reversal of the circuit court's order. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, this Court is of the opinion that the circuit court committed reversible error and accordingly, reverses the decision below.

## I.

### FACTS

On January 22, 2006, Elgene Phillips was driving his 1998 Dodge Ram 1500 truck northbound on Sissonville Drive near Sissonville, West Virginia, when his vehicle hydroplaned, ran off the left side of the road through a guardrail, and rolled over. Mr. Phillips died as a result of the accident. The petitioner, as administratrix of Mr. Phillips' estate, then filed a wrongful death action in the Circuit Court of Kanawha County alleging that the driver's restraint system in the decedent's truck (the seatbelt) was defective. Chrysler, the manufacturer of the decedent's truck, and Autoliv, the manufacturer of the seatbelt, were named as defendants.[1]

According to Gloria Phillips, who was a passenger in the truck, Mr. Phillips' seatbelt was latched prior to the accident but became unlatched during, and as a result of, the accident.[2] The petitioner's expert, William Muzzy, III, also opined that Mr. Phillips would not have sustained fatal injuries if his seatbelt had remained latched during the accident. Ms. Phillips, whose seatbelt did remain latched during the accident, suffered only minor injuries.

On February 19, 2009, the petitioner participated in a mediation with Autoliv and Chrysler. As a result of mediation, the parties reached a settlement of all claims and executed a handwritten settlement agreement (hereinafter, the "Agreement"). The full text of the Agreement provides:

*Settlement Agreement*

On February 19, 2009, the parties met in mediation and agreed to settle as follows:

(1) The Defendants agree to pay to the Plaintiff $150,000

(2) In return for said payment, the Plaintiff agrees as follows:

 (a) to keep the terms and conditions of the settlement confidential;

 (b) to execute a full and complete release of any claims asserted or which may have been asserted, to be prepared by counsel for the Defendants; and,

 (c) to retain all documents produced during discovery, as required by the terms of the protective order

---

1. Joe Holland Chevrolet, the automobile dealer that sold the truck to the decedent, was also named as a defendant.

2. Ms. Phillips testified that she specifically recalled that the decedent's seatbelt was properly secured prior to the accident. She testified that immediately prior to the wreck, she and the decedent stopped at B & B Market where she purchased groceries. She testified that when she climbed back into the truck, Mr. Phillips still had his seatbelt on and that it was not unlatched prior to the accident.

(3) The parties agree that, by entering into this settlement agreement, the Defendants do not admit to any liability, which is denied.

(4) The parties agree that this handwritten document is a binding and enforceable contract, to be replaced by typewritten documents, including a full and complete release, to be prepared by counsel for the Defendants.

(5) The Plaintiff further agrees to indemnify the Defendants for any and all claims stemming from this accident.

The Agreement was signed by Phillip J. Combs, counsel for Autoliv, James Popson, counsel for Chrysler and Joe Holland Chevrolet, Inc., Christopher L. Brinkley, counsel for Ms. Haynes, and by Ms. Haynes, as administratrix.

On April 28, 2009, an order was entered by the circuit court permitting the petitioner to accept the settlement amount of $150,000 in full and final settlement of all claims against Chrysler and Autoliv. Also on April 28, 2009, in exchange for the total sum of $150,000, the petitioner signed a full and final release of all claims against Chrysler and Autoliv. Neither the Agreement nor the release contained an apportionment between Autoliv and Chrysler regarding who was responsible for that amount. Following the circuit court's approval of the settlement by all parties and the execution of the signed release, the petitioner received two checks. On April 29, 2009, the petitioner received a $65,000 check from Autoliv.[3] The petitioner also received a check for $85,000 from Chrysler.[4] On April 30, 2009, the petitioner's counsel deposited both checks; however, because Chrysler had filed for bankruptcy, that check was returned for insufficient funds. The petitioner thereafter contacted Chrysler, but Chrysler refused to honor the check.

The petitioner then filed a July 9, 2009, motion to sever claims against Chrysler and a July 21, 2009, motion to compel Autoliv to pay the entire amount of the settlement. The petitioner asserted that Chrysler and Autoliv collectively agreed to pay $150,000 for the settlement of the wrongful death claim, which is reflected in the February 19, 2009, Agreement, in the April 28, 2009, signed release of claims against Autoliv and Chrysler, and in the April 28, 2009, final order approving the settlement. Said another way, the petitioner maintained that the parties did not agree to a separation of the settlement amount and argued that the $150,000 was to be paid by both Chrysler and Autoliv or either of them. Autoliv refused to pay more than the $65,000 check it provided to the petitioner on April 29, 2009, and further argued that the petitioner was barred by the doctrine of accord and satisfaction from pursuing a claim against it.

On May 4, 2010, the circuit court entered an order denying the petitioner's July 9, 2009, and July 21, 2009, motions. The circuit court noted that while the petitioner was not aware of the precise division of the settlement between the defendants, the petitioner was aware that each defendant would be contributing a specific amount of money and that the two payments combined would constitute the overall settlement amount of $150,000. The circuit court further held that when the petitioner cashed Autoliv's check and entered into a stipulated order of dismissal with prejudice, that the petitioner was bound by the doctrine of accord and satisfaction and was barred from pursuing a claim against Autoliv for the additional $85,000 that was supposed to be paid by Chrysler pursuant to the Agreement. As a result of the circuit court's order, the petitioner received only $65,000 in settlement proceeds. This appeal followed.

## II.

### STANDARD OF REVIEW

■■■■ As noted above, the petitioner assigns as error the circuit court's denial of her motion to sever claims against Chrysler and her motion to compel Autoliv to pay the remainder of an agreed upon settlement of

---

3. On May 12, 2009, the circuit court entered the "Stipulated Order of Dismissal With Prejudice" dismissing the action.

4. The date that the petitioner actually received the check from Chrysler is not in the record before this Court.

the wrongful death action. "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996). "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With these standards in mind, the parties' arguments will be considered.

## III.

## DISCUSSION

██ In this appeal, the petitioner states that her underlying wrongful death claim was settled for $150,000 with Autoliv and Chrysler as one settlement. She states that neither Autoliv nor Chrysler represented to her or to the circuit court that there were two separate settlements as Autoliv now claims. More specifically, the petitioner maintains that there is no evidence to support Autoliv's contention that there were two separate agreements, i.e., that she agreed to settle all of the claims against Autoliv for $65,000 and that she had a separate agreement with Chrysler to settle that claim for $85,000. Instead, the petitioner contends that Autoliv remains liable to her for the remaining $85,000.[5]

The petitioner disputes the circuit court's finding that an accord and satisfaction had occurred at the moment she deposited Autoliv's $65,000 check. The petitioner points out that due to the fact that the terms of the payment of the $150,000 were not fulfilled, accord and satisfaction could not operate as a bar to collect the entire sum due under the Agreement. She argues that accord and satisfaction requires full performance of the

terms of the compromise and that once the parties have fully complied with the terms of the compromise agreement, the doctrine is invoked and acts as a bar to all actions on the same agreement. The petitioner further argues that the circuit court's order failed to note any evidence that she accepted the partial payment with knowledge that she was receiving $65,000 rather than $150,000 as a full satisfaction of her claim against Autoliv and Chrysler.

Conversely, Autoliv contends that the circuit court properly found that the doctrine of accord and satisfaction bars the petitioner from attempting to collect Chrysler's portion of the settlement from Autoliv. Autoliv states that an accord and satisfaction requires full performance of the terms that are compromised and that once the parties have complied with the terms of the agreement, the doctrine acts as the bar to all actions upon the same agreement. In this case, Autoliv maintains that all of the parties understood when it tendered the $65,000 check, that it did so in full settlement of all of the petitioner's claims, and that the petitioner accepted and cashed the check with such knowledge. As such, Autoliv reasons that the parties complied with the Agreement and that further action by the petitioner against Autoliv on the same claim is barred by the doctrine of accord and satisfaction.

██ This Court has held on numerous occasions that "[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed." Syllabus Point 2, *Bethlehem Mines Corp. v. Haden*, 153 W.Va. 721, 172 S.E.2d 126 (1969). *Accord* Syllabus Point 2, *Orteza v. Monongalia County General Hospital*, 173 W.Va. 461, 318 S.E.2d 40 (1984); Syllabus Point 3, *Waddy v. Riggleman*, 216 W.Va. 250, 606 S.E.2d 222 (2004). "Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words

---

5. In her brief, the petitioner argues that Autoliv and Chrysler committed fraud against her and the circuit court. Autoliv states that such assertions are without merit and points out that this issue was not asserted by the petitioner before the circuit court, and thus, Autoliv had no oppor-

tunity to address it below nor did the circuit court. During arguments before this Court, the petitioner's counsel stated that he was not asserting a separate claim of fraud, but was merely contending that Autoliv's argument that there were two separate settlements was disingenuous.

employed and obligations undertaken." Syllabus Point 6, *State ex rel. Frazier & Oxley, L.C. v. Cummings,* 212 W.Va. 275, 569 S.E.2d 796 (2002). *See also* Syllabus Point 4, *Estate of Tawney v. Columbia Natural Res., L.L.C.,* 219 W.Va. 266, 633 S.E.2d 22 (2006) ("The term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning."). Moreover, if the contractual language is ambiguous, it must be construed before it can be applied. *See Estate of Tawney,* 219 W.Va. at 272, 633 S.E.2d at 28 ("[W]hen a contract is ambiguous, it is subject to construction."). Thus, " ' "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syllabus Point 3, *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1963).' Syllabus point 1, *Hatfield v. Health Management Associates of West Virginia,* 223 W.Va. 259, 672 S.E.2d 395 (2008)." Syllabus Point 5, *Dan's Carworld, LLC v. Serian,* 223 W.Va. 478, 677 S.E.2d 914 (2009).

▇▇▇ In this case, the contract between the parties is clear and unambiguous. It states: "The Defendants agree to pay to the Plaintiff $150,000." All of the parties signed the Agreement, all of the parties were represented by counsel, and there is nothing within the four corners of the document that provides for an apportionment of the $150,000 agreed upon to be paid by Chrysler or Autoliv.[6] If Chrysler or Autoliv had a separate contractual agreement outside of the February 19, 2009, Agreement with the petitioner, such an agreement is not relevant to the resolution of the petitioner's contract claim. As stated, the written contract between the parties provides that the "defendants" would pay the petitioner $150,000. It is not disputed that the defendants were

Chrysler and Autoliv. If either had intended a division of responsibility then they very easily could have done so in the February 19, 2009, Agreement, in the April 28, 2009, signed release of claims against Autoliv and Chrysler, and in the April 28, 2009, final order approving the settlement. Neither Autoliv nor Chrysler did so and now Autoliv is bound by the underlying Agreement.

▇▇▇ Having determined that the terms of the contract were not ambiguous, the Court will now turn to Autoliv's argument that by cashing the $65,000 check, that the petitioner and Autoliv reached an accord and satisfaction. Black's Law Dictionary defines an "accord and satisfaction" as "[a]n agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the debt by the substituted performance. The new agreement is called the *accord,* and the discharge is called the *satisfaction.*" Black's Law Dictionary 19 (9th ed.2009). Moreover,

> By definition, an accord and satisfaction requires full performance of the terms of the compromise. Once the parties have fully complied with the terms of the compromise agreement, the doctrine is invoked and acts as a bar to all actions upon the same agreement. *See* 1A Michies, Accord & Satisfaction at § 1 *Masse [v. Masse,* 112 R.I. 599], 313 A.2d [642] at 645 [ (1974) ].

*Summers v. Summers,* 186 W.Va. 635, 641, 413 S.E.2d 692, 698 (1991). This Court has applied the three-prong standard for establishing an accord and satisfaction as follows:

> " 'To show an accord and satisfaction, the person asserting the defense must prove three elements: (1) Consideration to support an accord and satisfaction; (2) an offer of partial payment in full satisfaction of a disputed claim; and (3) acceptance of the partial payment by the creditor with knowledge that the debtor offered it only upon the condition that the creditor accept the payment in full satisfaction of the dis-

---

**6.** As a general rule, a court should not consider extrinsic evidence to give meaning to a contract unless the contract terms are vague and ambiguous. *See* Syllabus Point 2, *Kelley, Gidley, Blair & Wolfe, Inc. v. City of Parkersburg,* 190 W.Va. 406, 438 S.E.2d 586 (1993); Syllabus Point 2, *Interna-* *tional Nickel Company v. Commonwealth Gas Corporation,* 152 W.Va. 296, 163 S.E.2d 677 (1968); Syllabus Point 2, *Berkeley Co. Pub. Serv. Dist. v. Vitro Corp. of Am.,* 152 W.Va. 252, 162 S.E.2d 189 (1968).

puted claim or not at all.' Syllabus Point 1, *Charleston Urban Renewal Authority v. Stanley,* 176 W.Va. 591, 346 S.E.2d 740 (1985)."

Syllabus Point 5, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

 Autoliv states that this Court's resolution in *Peavy* is dispositive of the case herein. It suggests that just as in *Peavy,* the facts of this case demonstrate the three elements necessary to find an accord and satisfaction. It contends that the language of its cover letter included with the $65,000 check constitutes the offer; the check was the consideration; and the cashing of the check constituted the petitioner's acceptance of the offer. Autoliv, however, misconstrues the *Peavy* case and its application to the case *sub judice.* In Syllabus Point 7 of *Peavy,* this Court held that "[w]hether the parties altered their original contract or entered a transaction or compromise depends on whether there was mutual consent. It is necessary to examine the evidence and determine whether the parties arrived at a new agreement or acted under the existing one." In this case, there is no evidence that the petitioner agreed to accept $65,000 rather than $150,000. It is clear that the petitioner believed that she was receiving $150,000 rather than $65,000 from Autoliv and an $85,000 bad check from Chrysler. As this Court stated long ago, "[a]n accord and satisfaction does not operate as a bar as to matters unknown to the parties at the time of its execution. To give it that effect might work manifest injustice, and impose upon the releasor an instrument to which he did not assent." *Moore v. Hope Natural Gas Co.,* 76 W.Va. 649, 654, 86 S.E. 564, 566–567 (1915).

Moreover, there are several significant distinctions between the facts presented in *Peavy* and the facts involved in the present case. One critical distinction between *Peavy* and this case is that the case herein concerns a settlement between the petitioner and two separate defendants memorialized by one written contract to settle the underlying wrongful death claim. In *Peavy,* there was one plaintiff and one defendant and the case hinged upon the notation on the settlement check. In *Peavy,* the check stated, "for full settlement of all claims." 192 W.Va. at 191, 451 S.E.2d at 757. In this case, nothing was written on the $65,000 check indicating that it was being provided as full settlement of the underlying $150,000 Agreement. Likewise, in *Peavy,* the notation that the $750 settlement check was being presented for payment "under protest" was evidence that the plaintiff in that case was aware of the condition upon which the check was being offered. 192 W.Va. at 193, 451 S.E.2d at 759. There is no comparable evidence in the present case to demonstrate any awareness by the petitioner with regard to the condition of full settlement of the wrongful death claim for $65,000. As stated, when the petitioner cashed Autoliv's $65,000 check, she did not know that Chrysler's check for $85,000 would be returned for insufficient funds. Autoliv maintains that the cover letter it provided with the $65,000 check to the petitioner proved that an accord and satisfaction had occurred. The cover letter stated in its entirety:

Please find the enclosed settlement check on behalf of Autoliv ASP, Inc., # 0521877, to resolve the above-referenced matter. Thank you for this signed Release and Dismissal Order.

This, in and of itself, is insufficient evidence to show that an accord and satisfaction was reached between the petitioner and Autoliv.

Upon a full review of the record, it simply cannot be concluded that the critical third element of the accord and satisfaction test was met, i.e., the acceptance with "knowledge that the debtor offered it only upon the condition that the creditor accept the payment in full satisfaction of the disputed claim." Syllabus Point 5, in part, *Peavy.* The absence of any discussion regarding two separate settlements against Autoliv and Chrysler, the complete absence of any discussion regarding a new agreement between Autoliv and the petitioner to accept $65,000 as a compromised settlement instead of the agreed upon $150,000 figure, and the lack of evidence surrounding Chrysler's bankruptcy prior to depositing both checks, all indicate that the petitioner's cashing of the $65,000 check did not constitute an accord and satisfaction under the facts of this case. Based

on the foregoing, the decision of the Circuit Court of Kanawha County is hereby reversed.[7]

## IV.

### CONCLUSION

For the reasons stated above, the final order of the Circuit Court of Kanawha County entered on May 4, 2010, is reversed and this case is remanded to the circuit court to enter an order directing Autoliv to fulfill its contractual obligations and to pay the petitioner the remaining $85,000 as provided by the February 19, 2009, Agreement.

Reversed and remanded.

Justice BENJAMIN concurs and reserves the right to file a concurring opinion.

Justice McHUGH, deeming himself disqualified, did not participate in the decision in this case.

BENJAMIN, J., concurring:

July 22, 2011.

I agree with the result reached in the majority opinion but wish to emphasize certain facts that support this determination.

This case was settled through court-annexed mediation, where the parties collectively entered into a contract to settle this claim against all defendants for the sum of $150,000.00. As noted in the majority opinion, the terms of the settlement were stated as follows: "The Defendants agree to pay to the Plaintiff $150,000.00."

This handwritten document provided the basis for the entry of the circuit court's order authorizing the settlement of this wrongful death claim. In the court order entered April 29, 2009, the circuit court makes the followings findings regarding the settlement:

> That Sheila F. Haynes, as Administratrix of the Estate of Elgene Phillips, Jr., be GRANTED permission to settle and and all claims that have been made, could have been or could be asserted on behalf for the Estate of Elgene Phillips, Jr., potential beneficiaries, takers and claimants to this settlement and the potential claimants for the wrongful death of Elgene Phillips, Jr., against Daimler Chrysler Corporation and Autoliv ASP, Inc, and any entity or individual associated with these entities, and to accept the aforesaid settlement, the total amount of which is the sum of **ONE HUNDRED, FIFTY THOUSAND DOLLARS ($150,000.00)**, as set forth above, in full and final settlement of all claims against Daimler Chrysler Corporation and Autoliv ASP, Inc.

(emphasis in original).

The parties further reduced their agreement to a written settlement agreement, in which Sheila Haynes individually and as ad-

---

7. In the final sentence of the petitioner's brief before this Court, the petitioner states that she also "requests that it be awarded costs and expenses incurred in prosecuting this appeal, including reasonable attorney's fees, as well as any other relief deemed appropriate by the Court." In *Beto v. Stewart,* 213 W.Va. 355, 359, 582 S.E.2d 802, 806 (2003), this Court held that "[t]he decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse." Moreover, since the petitioner did not raise the issue of attorney's fees before the circuit court and only mentions it in passing as a final sentence in his appellate brief, he has abandoned that assignment of error. As we explained in *State Dept. of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." (Citation omitted). Moreover, as we held in Syllabus Point 2 of *WV Dept. of Health &*

*Human Resources Employees Federal Credit Union v. Tennant,* 215 W.Va. 387, 599 S.E.2d 810 (2004), " '[a]n petitioner must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.' Syllabus Point 5, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966)." Likewise, this Court has previously adhered to the rule that, "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). *Accord State v. Allen,* 208 W.Va. 144, 162, 539 S.E.2d 87, 105 (1999); *State v. Easton,* 203 W.Va. 631, 642 n. 19, 510 S.E.2d 465, 476 n. 19 (1998); *State v. Lilly,* 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995).

ministratrix of Elgene Phillips, Jr.'s estate, compromised all claims in consideration of the payment of $150,000.00.

It is uncontroverted that the parties entered into a contract, for good and sound consideration, for the payment of an agreed upon amount. Although it was within the ability of the defendants to set forth individual amounts which each would individually pay to settle the plaintiffs' claims, nowhere in any of these documents is there any such apportionment, allotment, division or indication that each defendant bore a certain amount of the settlement. Rather, the clear impression is that the defendants were collectively settling the plaintiffs' claims. Without the clear designation for what portion each would bear, the defendants, Autoliv ASP, Inc., and Daimler Chrysler Corporation, become jointly and severally liable for the payment of this amount. Though perhaps unfortunate, the risk that one or the other defendant would default on its obligation is therefore one properly borne by the remaining defendant, not the plaintiff.